**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-mj-8459-RMM**

> FILED BY_____SP_____D.C.
>
> **Jun 18, 2026**
>
> ANGELA E. NOBLE
> CLERK U.S. DIST. CT.
> S. D. OF FLA. - West Palm Beach

**IN RE SEALED COMPLAINT**

_____/

**CRIMINAL COVER SHEET**

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to October 3, 2019 (Mag. Judge Jared M. Strauss)? No

2. Did this matter involve the participation of or consultation with Magistrate Judge Eduardo I. Sanchez during his tenure at the U.S. Attorney's Office, which concluded on January 22, 2023? No

3. Did this matter involve the participation of or consultation with now Magistrate Judge Marty Fulgueira Elfenbein during her tenure at the U.S. Attorney's Office, which concluded on March 5, 2024? No

4. Did this matter involve the participation of or consultation with Magistrate Judge Ellen F. D'Angelo during her tenure at the U.S. Attorney's Office, which concluded on October 7, 2024? No

5. Did this matter involve the participation of or consultation with Magistrate Judge Yeney Hernandez during her tenure at the U.S. Attorney's Office, which concluded on April 2, 2026? No

JASON REDING QUIÑONES
UNITED STATES ATTORNEY

By: _____
*Justin Chapman*
Justin Chapman
Assistant United States Attorney
FL Bar No. 85778
United States Attorney's Office
500 S. Australian Ave., #400
West Palm Beach, Florida 33401
(561) 398-8871
Justin.chapman4@usdoj.gov

AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
Southern District of Florida

| | |
|---|---|
| United States of America<br>v.<br>Robert Lee Turner, Jr. | )<br>)<br>)<br>)<br>)<br>) |

Case No.  26-mj-8459-RMM

_____
Defendant(s)

FILED BY____SP____D.C.

**Jun 18, 2026**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___5/15/26, 6/8/26, and 6/15/26___ in the county of ___Palm Beach___ in the ___Southern___ District of ___Florida___ , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) and (b)(1)(C) | Distribution of a Schedule II Controlled Substance (Cocaine) |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

THADDEUS
COVALESKI

Digitally signed by THADDEUS
COVALESKI
Date: 2026.06.18 15:33:28
-04'00'

_____
Complainant's signature

___Special Agent Thaddeus Covaleski, ATF___
Printed name and title

Sworn and Attested to me by Applicant by Telephone (FaceTime) pursuant to Fed. R. Crim. P. 4(d) and 4.1

Date: ___6/18/26___

_____
Judge's signature

City and state: ___West Palm Beach, FL___     ___Hon. Ryon M. McCabe, U.S. Magistrate Judge___
Printed name and title

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Thaddeus Covaleski, being duly sworn, depose and state the following:

## AGENT BACKGROUND AND INTRODUCTION

1.     I am a Special Agent with the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), assigned to the West Palm Beach Field Office. I have been employed as a Special Agent with ATF since July 2022. As part of my duties as a Special Agent, I am responsible for conducting investigations of violations of federal laws, including but not limited to, those pertaining to firearms, narcotics, and firearms trafficking. I have conducted and participated in numerous investigations involving, but not limited to, the illegal possession and "straw purchasing" of firearms, firearms trafficking, Hobbs Act Robbery, narcotics trafficking, and possession of a firearm in furtherance of narcotics trafficking.

2.     I make this Affidavit for the limited purpose of establishing probable cause for a criminal complaint charging Robert TURNER ("TURNER") with three (3) counts of distribution of cocaine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

3.     The statements contained in this Affidavit are based on my personal knowledge, as well as information provided by other individuals, including other law enforcement officials and my review of records and other evidence obtained during the course of this investigation. I have included only those facts that I believe are necessary to establish probable cause in support of an arrest warrant.

## PROBABLE CAUSE

### Controlled Purchase of approximately ½ oz of Crack Cocaine – May 15, 2026

4.      From May 14, 2026, to May 15, 2026, at the direction of law enforcement, a documented ATF Confidential Informant that has been deemed credible ("CI"), exchanged communications with TURNER to arrange the purchase of a half (1/2) ounce of cocaine from TURNER to take place on May 15, 2026. TURNER gave the CI the address: 6164 Forest Hill Blvd #1601, West Palm Beach, FL, in the Southern District of Florida. All phone conversations were audio preserved and all text communications were preserved.

5.      On May 15, 2026, in the midafternoon hours, ATF UC-1 and the CI, equipped with audio/video recording equipment and ATF Investigative Funds, arrived in the area of 6164 Forest Hill Blvd #1601, West Palm Beach, Florida. Upon arrival, UC-1 and CI observed TURNER standing in the parking lot. TURNER entered the backseat of the UCV. Once inside the UCV TURNER told UC-1 and CI that he wasn't in possession of the crack cocaine and they needed to travel to Riviera Beach, FL to purchase it. UC-1 and CI along with TURNER drove in the UCV to the area of Riviera Beach.

6.      While traveling to Riviera Beach, TURNER stated that he deals in narcotics and firearms. TURNER called an unknown individual on the phone in the presence of UC-1 and CI who was giving TURNER directions to provide UC-1 and CI with crack cocaine. A short time later, UC-1, CI, and TURNER arrived at 1352 Martin Luther King Jr. BLVD, West Palm Beach, FL. TURNER exited the UCV and made contact with three (3) unknown black males (UMBs) under the carport of the residence. UC-1 observed one of the UMBs show TURNER what appeared to be a clear plastic baggie containing crack cocaine.

7.      TURNER returned to the UCV and told UC-1 that the source of supply (SOS) providing them with the narcotics was hesitant to deal with new individuals. UC-1 agreed to exit the UCV and meet the SOS. TURNER stated that he needed to speak with the SOS before he

introduced UC-1 to them. TURNER exited the UCV and went back to the carport to speak with the SOS. Shortly after, TURNER returned to the UCV and told UC-1 he needed a portion of the money for the crack cocaine before the SOS would sell the crack cocaine to them. UC-1 provided TURNER with $300.00 in ATF Investigative Funds. TURNER then exited the UCV to go retrieve the crack cocaine from the SOS. TURNER returned to the UCV and provided UC-1 and CI with a plastic baggie containing the suspected crack cocaine. UC-1 weighed the narcotics and appeared to be the agreed upon amount of a half (½ ) oz. UC-1 then provided TURNER with an additional $200.00 in ATF Investigative Funds for the crack cocaine. UC-1 then provided TURNER with an additional $100.00 in ATF Investigative Funds for facilitating the narcotics transaction.

8.      Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine. The field test positive cocaine and packaging had an approximate weight of 14.2 grams. The field test positive cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending. The controlled purchase with TURNER was captured on both video and audio recording.

**Controlled Purchase of approximately 2 oz of Crack Cocaine – June 8, 2026**

9.      On or about June 8, 2026, UC-1 contacted TURNER to conduct a narcotics transaction, to which TURNER agreed.

10.     On this same date, sometime in the mid-afternoon hours ATF UC-1 and UC-2 activated their monitoring and recording equipment. Then traveled to the agreed upon location to conduct the narcotics transaction. The ATF UCs were utilizing an undercover vehicle (UCV). Shorty after arriving at the agreed upon location the UCs placed a call to TURNER to advise him,

they had arrived at the Wawa located at 7289 Garden Rd., Riviera Beach, FL. TURNER stated that he was nearby and, on his way, to meet the UCs.

11.     At approximately 1545 hours the UCs observed TURNER enter the lot seated in the passenger seat of a blue Volkswagen SUV. TURNER exited the Volkswagen and entered the backseat of the UCV. Once inside the UCV, TURNER notified the UCs that he didn't have the crack cocaine. TURNER told the UCs that he would call his SOS to have the two (2) ounces of crack cocaine delivered to Wawa. TURNER placed a call to an unknown male in the presence of the UCs to order the crack cocaine. After the call ended, TURNER told the UCs that they would have to travel to a nearby location to meet the SOS to retrieve the crack cocaine. The UCs and TURNER departed the area in the UCV. TURNER directed the UCs to the area of 35th St. in Riviera Beach, FL.

12.     At approximately 1600 hours, the UCs and TURNER arrived at 1164 35th St., Riviera Beach, FL. TURNER told the UCs to park in front of a white Chevrolet truck. Once parked an unknown black male (UBM) approached the rear of the UCV. TURNER identified him as the SOS, rolled down the window, and told the UBM "I need two of em." UBM acknowledged and then walked across the street out of view. When the UBM returned, TURNER exited the UCV to speak with him. TURNER reentered the UCV and told the UCs that the SOS had to travel to an unknown location to retrieve the crack cocaine. The UBM entered the white Chevy truck and departed the area.

13.     While the UCs and TURNER waited for the UBM to return, TURNER informed the UCs he had previously been arrested and charged for selling narcotics to law enforcement. When the UBM returned to the area, he parked the white Chevy truck and walked over to TURNER at the window of the UCV. The UBM handed TURNER a clear plastic baggie containing the

suspected crack cocaine. TURNER then handed the baggie of suspected crack cocaine to UC-1 to inspect. The UCs weighed the narcotics and relayed that the weight was less than the agreed amount. The UBM agreed to sell the narcotics to the UCs for $1,800.00 instead of the original price of 2,000.00. The UCs provided TURNER with $1,800.00 in ATF investigative funds who then handed the money to the UBM. TURNER and the UBM then entered the white Chevy truck. When TURNER returned to the UCV from the white Chevy truck he asked the UCs to drop him at a store close by. The UCs and TURNER departed and the area in the UCV and the UBM departed on foot.

14.     At approximately 1610 hours the UCs and TURNER arrived at Rivier Beach Beauty Supply located at 2617 President Barack Obama Highway, Riviera Beach, FL. The UCs provided TURNER with an additional $100.00 in ATF Investigative funds for facilitating the narcotics transaction. The UCs then asked TURNER about purchasing firearms in the future. TURNER told the UCs "I got somebody… I'ma call you." Then TURNER exited the UCV and departed on foot. The UCs departed the area.

15.     Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine. The field test positive cocaine and packaging had an approximate weight of 51.0 grams. The field test positive cocaine was submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending. The controlled purchase with TURNER was captured on both video and audio recording.

**Controlled Purchase of approximately 4 oz of Crack Cocaine – June 15, 2026**

16.     From June 8, 2026, to June 15, 2026, UC-1 and TURNER exchanged telephonic communications to conduct a narcotics transaction. On June 15, 2026, UC 6021 contacted TURNER to conduct the narcotics transaction, to which TURNER agreed.

17.     On this same date, at approximately 1604 hours, UCs activated their monitoring/recoding equipment. Then, UCs traveled to the agreed upon location to conduct the narcotics transaction. UCs were occupying their ATF UCV.

18.     UC-1 received a telephonic call from TURNER who advised the UCs to meet him at the intersection of 35th St and Avenue O in Riviera Beach. The UCs traveled to that area to conduct the narcotics transaction.

19.     On this same date, at approximately 1617 hours, UCs arrived at 1149 35th St., Riviera Beach, FL and observed TURNER standing in the driveway. TURNER approached the UCV and entered the back seat. TURNER retrieved a clear plastic baggie containing the suspected crack cocaine and handed it to UC-1 to inspect. UC-1 weighed the narcotics which did not appear to be the agreed upon amount. UC-1 informed TURNER about the weight and TURNER told UCs that "He" (Source of supply) wanted $4,000.00 but would accept $3,200.00. TURNER agreed to sell the crack cocaine to UC-1 for $3,200.00. UC-1 provided TURNER with $3,200.00 in ATF Investigative funds for the crack cocaine. UC-1 provided TURNER with an additional $100.00 in ATF Investigative funds for facilitating the narcotics transaction. UC-1 asked TURNER about purchasing "Pipes" (Firearms) from TURNER as previously discussed. TURNER stated that he would send UC-1 photos of the firearms when he had them. UCs then departed the area.

20.     Following the transaction, the suspected crack cocaine from the transaction was field tested and yielded a positive result for the presence of cocaine. The field test positive cocaine and packaging had an approximate weight of 94.4 grams. The field test positive cocaine was

submitted to the DEA Southeastern laboratory for chemical analysis. The results of the laboratory analysis are pending. The controlled purchase with TURNER was captured on both video and audio recording.

## CONCLUSION

21. Based on the foregoing facts, I respectfully submit that there is probable cause to believe that Robert TURNER ("TURNER") committed three (3) counts of distribution of cocaine, a schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C).

**FURTHER YOUR AFFIANT SAYETH NAUGHT.**

Respectfully submitted,

THADDEUS COVALESKI
Digitally signed by THADDEUS COVALESKI
Date: 2026.06.18 11:46:48 -04'00'

Thaddeus Covaleski, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by FaceTime, on this __18__ day of June 2026, at West Palm Beach, Florida

HON. RYON M. McCABE
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

PENALTY SHEET

**Defendant's Name**: Robert Lee Turner, Jr.

**Case No**:   26-mj-8459-RMM

Count 1:  Distribution of a Schedule II Controlled Substance (Cocaine)

21 U.S.C. § 841(a) and (b)(1)(C)
* **Max. Term of Imprisonment**: 20 years
* **Mandatory Min. Term of Imprisonment**: N/A
* **Max. Supervised Release**: 3 years
* **Max. Fine**: $1,000,000
* **Special Assessment**: $100

Count 2:  Distribution of a Schedule II Controlled Substance (Cocaine)

21 U.S.C. § 841(a) and (b)(1)(C)
* **Max. Term of Imprisonment**: 20 years
* **Mandatory Min. Term of Imprisonment**: N/A
* **Max. Supervised Release**: 3 years
* **Max. Fine**: $1,000,000
* **Special Assessment**: $100

Count 3:  Distribution of a Schedule II Controlled Substance (Cocaine)

21 U.S.C. § 841(a) and (b)(1)(C)
* **Max. Term of Imprisonment**: 20 years
* **Mandatory Min. Term of Imprisonment**: N/A
* **Max. Supervised Release**: 3 years
* **Max. Fine**: $1,000,000
* **Special Assessment**: $100

*Refers only to possible term of incarceration, supervised release and fines.  It does not include restitution, special assessments, parole terms, or forfeitures that may be applicable.